No. 10,792.

JOHN KLEIN & CO. vs. W. H. PIPES, STATE TREASURER.

State warrants issued to public and charitable institutions under appropriation act 48 of 1888, payable out of the revenues of 1888, are prohibited from being sold, without the written approval of the Executive expressed on the face thereof, and are not negotiable instruments.

Parties acquiring such warrants, with or without such approval, have no greater right than the institutions themselves, to which originally issued, possessed.

Such institutions and parties can not be heard to complain, where the revenues of 1888 prove inadequate to pay all their warrants *in full* for that year, that some of those for the expenditures of the first half of the year have been paid *in full* while the others will be so in part only.

In the end, the whole *pro rata* will have been justly and equitably distributed.

APPEAL from the Seventeenth District Court, Parish of East Baton Rouge. *Buckner, J.*

*Charles Carroll,* for Plaintiffs and Appellees:

When the State revenues of any year are insufficient to pay in full the warants of that year, it is the duty of the Treasurer to divide funds coming into his hands ratably among all outstanding warrants, making no classes or preferences among the warrants of equal dignity, but treating all alike. State ex rel. Bier vs. Burke, Treasurer, 37 An. 434.

The fact that Treasurer Burke made an unlawful preference in paying certain warrants issued under the act of 1886, does not authorize the present Treasurer to discriminate against other warrants held by third parties, issued to the same beneficiaries under the act of 1888.

The Fay case, 36 An. 241, cited by defendant and the only pretense of authority either in law or jurisprudence urged for his course, has no bearing or relevancy in the present controversy, for the reasons stated at length in the foregoing brief. The Bier case, decided later, defines the duties of the Treasurer as to apportioning the State funds, and should be followed.

*W. H. Rogers*, Attorney General, for Defendant and Appellant:

The Treasurer, when funds on hand are not sufficient to pay appropriations in full, should equitably *pro rata*.

An undue preference or erroneous distribution to one class warrants the Treasurer in making *pro rata* with others of the same class who have received nothing. 36 An., p. 241.

The opinion of the court was delivered by

BERMUDEZ, C. J. This is a suit to direct the distribution of public moneys.

The plaintiffs complain of unauthorized and illegal preferences by the State Treasurer, in the payment of warrants drawn against the general fund of 1888, and this, to their injury as holders of certain warrants belonging to the *third* class, mentioned in the appropriation Act, for appropriations made for the second part of the year 1888, to be paid out of the revenue for that year. They charge that some warrants, under appropriation for 1886, for the first part of the year, of the same class, have been paid *in full*, while others, similar in every respect, remained unpaid, in part; that the warrants for appropriations for the second part of the year, made in 1888, have also remained altogether unpaid; that the whole revenue of 1888 ought to be pro-rated among the warrant holders under appropriations of that year, as the revenues of that year will be insufficient to pay all the warrants of 1888; that the treasurer proposes to apply what revenues of 1888 have come and will come to his hands to the payment *first*, of the unpaid warrants for the first half of the year 1888 and, *next*, to *pro-rate* what may remain among the warrants for appropriations for the second half of 1888, whereof the plaintiffs hold $23,941.02.

From a judgment perpetuating the injunction and directing payments to be made in the future, as claimed by the plaintiffs, the Treasurer appeals.

It appears that defendant's predecessor had paid *in full* all warrants for the third class representing the first quarter of 1888, issued under appropriation acts 47 and 61 of 1886, and likewise some of those of the same class for the second quarter; that the defendant has, since his coming into office, made payments on some of the third class warrants for the second quarter; that there remain some outstanding like warrants, as also warrants for the third and fourth

quarters, issued under act 48 of 1888, and that no payment has been made on account of the second half year of 1888.

We are at a loss, under that condition of things, to perceive how the plaintiffs can at all complain of the distribution to be made by the Treasurer, for the reason that the warrants they hold are *not negotiable* instruments transferable by indorsement of the payees and delivery; are not shown to have legally transferred to them as the law requires.

Even had they been legally transferred the plaintiffs would not, as transferees, have acquired greater rights than their transferers possessed.

The warrants which the plaintiffs claim to own are for expenditures for the fiscal year, commencing July 1, 1888, and ending June 30, 1889, to be paid out of the revenues of 1888. They appear to have been issued to certain public and charitable institutions.

The appropriation Act which authorizes them to be drawn, and under which the plaintiff claim, is act 48 of 1888.

That Act is an entirety and can not be accepted in part and repudiated in other respects by the plaintiffs who claim under its provisions.

It provides distinctly that *hereafter no* warrants issued under its provisions to public and charitable institutions shall be sold without the written approval of the Governor, expressed on the face of the warrant. (P. 43 at the top.)

The same prohibition is found in Act 47 of 1886. (Top of p. 73, second par.)

There is nothing in the record to show that the warrants held by the plaintiffs were ever disposed of *with* Executive sanction.

They therefore could not and did not pass from the institutions at any time to any one, and, in legal contemplation, are still in the hands and owned by these institutions.

Such being the legal facts, and conceeding that the warrants had been disposed of *with* the approval of the Governor, it is patent that the transferees would not have acquired any greater rights than the institutions themselves enjoyed.

Granting, as is urged, that some of the revenues of 1888 have been applied to the payment *in full* of certain warrants for the first part

cf the year 1888, these payments must be considered as having been made strictly to the institutions themselves or to their transferees. Such being the case, how could those institutions, or their transferees, be heard to complain that some of their warrants for 1888 have been paid *in full*, while others for the same year, will not be, the revenues for 1888 proving inadequate, and that the Treasurer ought to have *pro-rated* the revenues of 1888 so as to give them *only* a proportion of their warrants for the first half of the year?

It does appear that it must be a matter of utter insignificance, from a legal standpoint, for the institutions to receive payment in full of some, and all accruing *pro rata* on their other warrants, when, as a fact, *in the end* they are paid the entire *pro rata* accruing to them respectively on their warrants for the whole year.

Practically, they should be contented and grateful that they have received at first a full payment of their first warrants, and that they will receive, in due course of collection, on their other warrants, the portion which will accrue to them out of the inadequate revenues of 1888 to be applicable thereto under the law.

It is therefore ordered and decreed that the judgment appealed from be reversed, and it is now adjudged that the demand of plaintiffs be rejected, with judgment for defendant, with costs in both courts.